**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**LATENYA C.**

                     **Plaintiff,**                         **22-CV-00879-HKS**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                     **Defendant.**

## DECISION AND ORDER

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #10.

## BACKGROUND

On October 20, 2019, plaintiff, at the age of 33, protectively filed applications for disability insurance benefits and supplemental security income benefits, pursuant to Titles II and XVI of the Social Security Act . Dkt. #4, pp. 263-269, 274-285.[1] Plaintiff alleged an onset date of October 1, 2019. *Id*.

---

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

In her Disability Report filed on April 10, 2020, plaintiff alleged she was disabled due to HIV, anxiety, depression, high blood pressure, vertigo, body pain, fatigue, and lack of sleep. Dkt. #4, p. 318.

Plaintiff's claim was denied initially on September 14, 2020, Dkt. #4, pp. 101-102, and on reconsideration on February 11, 2021. Dkt. #4, pp. 129-130.

Plaintiff requested a hearing, and a telephonic hearing was held on April 26, 2021 before Administrative Law Judge ("ALJ") Benjamin Chaykin. Dkt. #4, pp. 37-72. Plaintiff appeared pro se. *Id.*

Upon examination by the ALJ, plaintiff testified that she is approximately 5' 2" tall, weighs 185 pounds, and is right-handed. Dkt. #4, pp. 46-47. She has three children, and she lives with her boyfriend and her two youngest children, who are 7 and 5 years old. Dkt. #4, p. 47. Her boyfriend works outside the home. Dkt. #4, p. 48.

Plaintiff testified that she has a driver's license and drives two to three times a week, usually to the grocery store. Dkt. #4, pp. 47-48.

Plaintiff also testified that she stopped working in 2019 because she was in a lot of pain and was nauseous, weak, dizzy, and vomited a lot. Dkt. #4, 48. Her feet also hurt a lot. *Id.* She took time off to see doctors to figure out what was wrong, and then she got anxiety about work. *Id.* Then, she slipped in the shower and hurt her arm. Dkt. #4,

p. 49. Plaintiff testified that she also has carpal tunnel in her right hand, which causes tingling. Dkt. #4, p. 50.

Plaintiff next testified that she has pain in her neck, a tear in her right shoulder, and sciatica in her legs. Dkt. #4, pp. 51-52. She has started physical therapy to see if it will help with her neck. Dkt. #4, p. 54.

Plaintiff testified that she is also HIV-positive and switched her medications because she was experiencing nausea. *Id.*

The ALJ asked plaintiff to describe a typical day, and plaintiff testified that she gets up around 8:00 a.m. and feeds her children and does a few dishes. Dkt. #4, pp. 54-55. Then, she will watch some television, cook dinner, and give the children baths. Dkt. #4, p. 55.

Plaintiff testified that she wakes up at night because she needs to urinate a lot and her thoughts are "running." Dkt. #4, pp. 55-56.

Next, plaintiff testified that she sometimes takes her children to the park. Dkt. #4, p. 58. She is also attending counseling for depression and anxiety, and she takes Sertraline and Buspirone, which help some. *Id.* She testified that a counselor diagnosed her with PTSD related to being raped by her oldest child's father, from whom she contracted HIV. Dkt. #4, pp. 61-62.

The ALJ next heard testimony from Jane Gerrish, a vocational expert ("VE"). Dkt. #4, p. 64. The VE testified that plaintiff's past work as a cashier is classified as light work, but it was medium as performed because plaintiff had to lift up to 50 pounds. Dkt. #4, p. 67. Plaintiff also previously worked as a cleaner (light), warehouse worker (medium), and as an assembler (light, medium as performed). *Id.*

Next, the ALJ asked the VE to assume someone with plaintiff's age, education, and work history, who can perform light work with the following restrictions: no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps or stairs; occasional stooping, crouching, balancing, kneeling, or crawling; must avoid even moderate exposure to dangerous hazards such as unprotected heights or dangerous machinery; is limited to simple routine tasks; can sustain concentration and persistent periods for up to two hours at a time; and is limited to occasional changes in a stable work environment. Dkt. #4, pp. 67-68.

Under this hypothetical, the VE testified that the individual could perform plaintiff's past work as a cashier. Dkt. #4, p. 68.

The ALJ then asked the VE if the individual was instead limited to sedentary work, whether she could perform jobs in the national economy. *Id.* The VE testified that the person could perform the jobs of charge account clerk, final assembler, and ticket counter. Dkt. #4, pp. 68-69.

The VE then testified that, if the person were also limited in frequent reaching, handling, and fingering, she could still perform the jobs of cashier, charge account clerk, final assembler, and ticket counter. Dkt. #4, p. 70. However, if she was limited to occasional handling and fingering with the dominant right upper extremity, she could not perform those jobs. *Id.*

On November 4, 2021, the ALJ issued an unfavorable decision finding that plaintiff was not disabled. Dkt. #4, pp. 16-36. The Appeals Council denied plaintiff's request for review on September 13, 2022, Dkt. #4, pp. 5-10, and this action followed.

## DISCUSSION AND ANALYSIS

### Legal Standards

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since

October 1, 2019, the alleged onset date; (2) plaintiff has the severe impairments of right shoulder disorder, HIV, and spine disorder; (3) plaintiff's impairments do not meet or medically equal any listed impairment; (4) plaintiff has the RFC to perform light work[2] with the following limitations: no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps or stairs; frequent stooping; and she must avoid even moderate exposure to dangerous hazards such as unprotected heights or dangerous machinery; (5) plaintiff is able to perform her past relevant work as a Cashier II; and (6) plaintiff was not, therefore, disabled within the meaning of the SSA from October 1, 2019, to the date of the ALJ's decision. Dkt. #4, pp. 21-31.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F. Supp.3d 2, 7 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2))*.*

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be*. Id.* (citing 20 C.F.R. § 416.920c(c)(1))*.* Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2))*.* Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

**Challenge to the ALJ's Decision**

Plaintiff confines her appeal to a single issue: she argues that, because the ALJ found that she had mild limitations in mental functioning at step two of the sequential analysis, he erred by failing to include mental health limitations in the RFC. Dkt. #5, p. 1.[3] The Court disagrees.

*Applicable Legal Principles*

"At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities." *Alba A. v. Comm'r of Soc. Sec.*, 1:24-CV-02577-GRJ, 2025 WL 2022547, at *3 (S.D.N.Y. July 18, 2025) (citation omitted).

"Although the Second Circuit has held that this step is limited to screening out de minimis claims. . .the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition 'severe.'" *Id.* (cleaned up).

"Indeed, a finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have no more than a minimal effect on an individual's ability to work." *Id.* (citations and internal quotation marks omitted).

---

[3] Plaintiff does not challenge the ALJ's findings regarding her physical impairments.

~ 9 ~

Further, it is well established that a finding of mild mental limitations at step two of the sequential analysis does not require inclusion of related limitations in the plaintiff's RFC. *See, e.g., Jade C. v. Comm'r of Soc. Sec.*, Case # 24-CV-6287-FPG, 2025 WL 3337260, at *4 (W.D.N.Y. Aug. 5, 2025) (ALJ did not err in omitting mental-health restrictions from RFC although he found plaintiff had "mild" mental impairments at step two); *Janine T. v. Comm'r of Soc. Sec.*, Case # 23-CV-384-FPG, 2024 WL 1678128, at *3 (W.D.N.Y. April 18, 2024) (ALJ did not err in not including mental limitations in plaintiff's RFC where he found her depression to be mild and non-severe at step two); *Kathryn A. v. Comm'r of Soc. Sec.*, No. 3:22-cv-1392 (SDV), 2023 WL 8596012, at *9 (D. Conn. Dec. 12, 2023) ("In other words, a finding of mental limitation in analysis of the paragraph B criteria at Step 2 does not necessarily imply a corresponding limitation in a claimant's RFC.") (citation omitted).

### The ALJ Adequately Explained His RFC Determination

Plaintiff asserts that the ALJ "did not explain why he elected to incorporate no mental limitations" in the RFC, resulting in reversible error. Dkt. #5-1, p. 8. This is not true.

First, the Court notes that, at step two of his analysis, the ALJ set forth a thorough narrative of the record evidence regarding plaintiff's affective disorder, including her own reports of treatment she had been receiving, her medications, and her activities of daily living. Dkt. #4, pp. 23-24. Common sense dictates that that analysis necessarily informed the ALJ's subsequent RFC formulation. *Jade C.*, 2025 WL 2227260, at *4 ("As

~ 10 ~

for the lack of explanation, the Court understands the ALJ to have omitted any mental-health restrictions in the RFC for the same reasons that he deemed Plaintiff's mental impairments non-severe, including the mild objective findings, extent of her daily activities, and the unremarkable medical opinions.").

Second, the ALJ expressly noted that he considered plaintiff's anxiety and depression in reaching her RFC. Dkt. #4, p. 26. This is consistent with applicable regulations. *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe'. . .when we assess your residual functional capacity.").

In explaining his assessment of the medical opinions, the ALJ noted that two state agency psychological consultants—Drs. Tessler and Brown—had opined that plaintiff's depression and related disorders were non-severe and that she had only mild limitations in the relevant functional areas. Dkt. #4, pp. 29, 79-80, 141. The ALJ found these opinions persuasive as they were supported by, and consistent with, the record evidence "as more fully discussed and considered above," *i.e.,* in the step two analysis. Dkt. #4, p. 29.

Reliance on such state-agency opinions, in combination with the ALJ's step-two analysis, is sufficient to support his decision not to include mental-health limitations in plaintiff's RFC. *Jade C.*, 2025 WL 2227260, at *3-4. Plaintiff thus has not shown that the ALJ's assessment of her RFC was unreasonable.

In sum, plaintiff "cannot merely disagree with the ALJ's weighing of the evidence or argue that evidence in the record could support [her] position." *Laura K. v. Comm'r of Soc. Sec.*, 23-CV-641 (JLS), 2025 WL 339006, at *6 (W.D.N.Y. Jan. 30, 2025) (citation omitted). Instead, plaintiff "must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record." *Id.* Plaintiff has not done so.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #5) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #7) is granted.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED: Buffalo, New York
August 19, 2025

 s/ H. Kenneth Schroeder, Jr.
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**